## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VLADIMIR GUSINSKY, On Behalf of The Vladimir Gusinsky Revocable Trust Dated August 15, 1993, Derivatively On Behalf of ARCHER-DANIELS-MIDLAND COMPANY, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| PATRICIA A. WOERTZ, GEORGE W. BUCKLEY, MOLLIE HALE CARTER, DONALD E. FELSINGER, VICTORIA F. HAYNES, ANTONIO MACIEL NETO, PATRICK J. MOORE, THOMAS F. O'NEILL, KELVIN R. WESTBROOK, and M. BRIAN MULRONEY, | ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants, | ) ) | |
| -and- | ) ) | |
| ARCHER-DANIELS-MIDLAND COMPANY, | ) ) | |
| Nominal Defendant. | ) | |

### VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff alleges, upon information and belief based upon, *inter alia,* the investigation made by and through his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged based upon personal knowledge, as follows:

### INTRODUCTION

1.      This is a shareholder derivative action on behalf of Nominal Defendant Archer-Daniels-Midland Company ("ADM" or the "Company") against all of the members of the Board of Directors (the "Board") of the Company and one former member of the Board for violations of fiduciary duties owed by them to the Company and for waste of corporate assets.  These

violations, in turn, have substantially injured the Company.

2.      As detailed herein, the Individual Defendants (as defined herein) caused the Company to file an Annual Proxy Statement (Schedule 14A) with the United States Securities and Exchange Commission ("SEC") on September 25, 2009 (the "Proxy Statement), that contained materially false or misleading statements and omitted material facts.  The Proxy Statement as issued violated Section 14(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78n(a); Rule 14a-9, 17 C.F.R. § 240.14a-9, of the SEC promulgated thereunder; SEC Schedule 14A, 17 C.F.R. § 240.14a-101; SEC Reg. S-K (Item 402), 17 C.F.R. § 229.402; Section 162(m) of the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 162(m); and Treasury Regulation ("Treas. Reg.") 1.162-27, 26 C.F.R. § 1.162-27, promulgated thereunder.  By approving and issuing the Proxy Statement, the Individual Defendants caused substantial losses to the Company in violation of their fiduciary duties as directors and/or officers of the Company.

3.      Despite this misconduct and the substantial harm that the Company has already suffered, and is likely to suffer, the Individual Defendants failed to investigate the challenged misconduct or seek remedial relief against any of the Individual Defendants, nor is there any reasonable possibility they will ever do so.

4.      The "Relevant Period" or "relevant time" as utilized herein means the period of time beginning on the date when one or more of the Individual Defendants commenced formulation, review, or consideration of any of the materially false or misleading statements or statements omitting a material fact discussed herein, and ending on November 5, 2009, following the Company's annual shareholder meeting.

**JURISDICTION AND VENUE**

5.     The jurisdiction of this Court is founded upon federal question jurisdiction pursuant to section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331, in that the claims herein arise under the federal statutes and regulations set forth in paragraph 2, above.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) in that nominal defendant ADM is incorporated in the State of Delaware.

7.     This action is not a collusive one to confer jurisdiction on this Court.

**THE PARTIES**

**Plaintiff**

8.     Plaintiff was at all relevant times a stockholder of the Company.  Plaintiff brings this action derivatively in the right of and for the benefit of the Company.  Plaintiff will fairly and adequately represent the interests of the Company and its shareholders in enforcing the rights of the Company.  Plaintiff is a citizen of Illinois.

**Nominal Defendant**

9.     Nominal Defendant ADM is a corporation duly organized and existing under the laws of the State of Delaware.  The Company maintains its principal executive offices at 4666 Faries Parkway, Decatur, Illinois 62525.  According to its current Form 10-K filed with the SEC on August 26, 2009, ADM "is one of the world's largest processors of oilseeds, corn, wheat, cocoa, and other feedstuffs and is a leading manufacturer of vegetable oil and protein meal, corn sweeteners, flour, biodiesel, ethanol, and other value-added food and feed ingredients. The Company also has an extensive grain elevator and transportation network to procure, store, clean, and transport agricultural commodities, such as oilseeds, corn, wheat, milo, oats, and barley." Further, "[t]he Company's operations are classified into three reportable business segments:

3

Oilseeds Processing, Corn Processing, and Agricultural Services. Each of these segments is organized based upon the nature of products and services offered." The Company is publicly owned, and its shares are traded on the New York Stock Exchange under the symbol "ADM."

**Current Director Defendants**

10.    Defendant George W. Buckley ("Buckley") is and has been a director of ADM since 2008.   According to the Proxy Statement, Buckley serves on the Company's Audit Committee.

11.    Defendant Mollie Hale Carter ("Carter") is and has been an ADM director since 1996.   According to the Proxy Statement, Carter is Chair of the Nominating and Corporate Governance Committee and serves on the Audit Committee.

12.    Defendant Donald E. Felsinger ("Felsinger") is and has been a director since 2009. According to the Proxy Statement, Felsinger is a member of the Company's Nominating and Corporate Governance and the Compensation and Succession Committees.

13.    Defendant Victoria F. Haynes ("Haynes") is and has been a director at ADM since 2007. According to the Proxy Statement, she serves on the Company's Audit Committee.

14.    Defendant Patrick J. Moore ("Moore") is and has been a director since 2003. According to the Proxy Statement, Moore is a member of the Executive Committee and the Compensation and Succession Committee.

15.    Defendant Antonio Maciel Neto ("Neto") is and has been an ADM director since 2006.   According to the Proxy Statement, he serves on the Company's Compensation and Succession Committee and the Nominating and Corporate Governance Committee.

16.    Defendant Thomas F. O'Neill ("O'Neill") is and has been a director of ADM since 2004. According to the Proxy Statement, O'Neill is Chair of the Audit Committee.

4

17.     Defendant Kelvin R. Westbrook ("Westbrook") is and has been an ADM director since 2003.  According to the Proxy Statement, Westbrook serves as Chair of the Compensation and Succession Committee and is a member of the Nominating and Corporate Governance Committee.

18.     Defendant Patricia A. Woertz ("Woertz") has occupied numerous high-level positions at ADM including serving as Chairman of the Board since February 2007 and President and Chief Executive Officer ("CEO") since May 2006.  According to the 2009 Proxy, Woertz serves as Chair of the Company's Executive Committee.

**Former Director Defendant**

19.     Defendant M. Brian Mulroney ("Mulroney") was a director of ADM from 2003 until on or about November 5, 2009.

20.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Current Director Defendants."

21.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

**Current Director Non-Defendant**

22.     Current Director Pierre Dufour ("Dufour") is and has been an ADM director since May 6, 2010.  According to a press release issued by ADM on that date, Dufour serves on the Audit Committee.  Dufour joined the Board after the end of the Relevant Period, and is not named as a defendant in this action.

**DUTIES OF THE INDIVIDUAL DEFENDANTS**

23.     By reason of their positions as directors and/or officers of the Company and because of their ability to control the business and corporate affairs of the Company, the

Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care and were, and are, required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were, and are, required to act in furtherance of the best interests of the Company and its shareholders and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owed and owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

24.     The Individual Defendants, because of their positions of control and authority as directors or officers of the Company, were able to and did, directly and indirectly, commit or fail to prevent the wrongful acts complained of herein.  Because of their directorial and executive positions with the Company, each of the Individual Defendants had access to adverse non-public information about the financial condition and operations of the Company, including, without limitation, the misconduct of the other Individual Defendants.

25.     At all material times hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of the Company, and was at all times acting within the course and scope of said agency.

26.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial, business, and corporate affairs of the Company.  By virtue of such duties, the officers and directors of the Company were required, among other things, to:

a.     Manage, conduct, supervise and direct the business affairs of the Company in accordance with the laws of the United States, the states in which it conducted business, and the Company's charter and bylaws;

6

      b.      Implement and oversee in good faith, and with loyalty, adequate internal  controls sufficient to monitor and prevent the officers, directors, and employees of the Company from violating or acting in contravention to applicable federal and state laws, rules and regulations; and

      c.      Refrain from using their status as directors or officers to the detriment of the Company and its shareholders.

27.      Certain Individual Defendants assumed additional fiduciary duties in connection with their service on the Board's Audit Committee, duties which they were required to exercise with loyalty and in good faith.  According to its charter, the Audit Committee is responsible for, among other things, assisting the Board "in the oversight of (1) the integrity of the financial statements of the Company, [and] (2) the effectiveness of the internal control over financial reporting."  It is also charged with a assisting the Board in its oversight of "the Company's compliance with legal and regulatory requirements."

28.      The Audit Committee's charter specifically calls for its members to "provide assistance to the Board in fulfilling its oversight responsibility to the shareholders relating to the Company's financial statements and the financial reporting process, preparation of the financial reports and other financial information provided by the Company to any governmental or regulatory body."  According to the charter, "the Committee will promulgate, and have the authority to assure adherence to, policies and procedures regarding compliance with the law, the Company's procedures for circulating these policies and for educating employees regarding compliance with these policies."  The Audit Committee "prepare[s] the report to be included in the Company's annual proxy statement as required by" SEC rules.

29.      According to the Proxy Statement, the Audit Committee was comprised during the Relevant Period of Current Director Defendants Buckley, Carter, Haynes, and O'Neill

(Chair).

## SUBSTANTIVE ALLEGATIONS

30.     I.R.C. § 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  This includes "a reasonable allowance for salaries or other compensation for personal services actually rendered." I.R.C. § 162(a)(1).

31.     The deduction is subject to certain limitations for publicly held corporations.  In their case, the amount of "applicable employee remuneration" that is deductible for "covered employees," generally meaning the Chief Executive Officer and the other three highest compensated officers for the taxable year, is limited to $1,000,000 per covered employee.  I.R.C. § 162(m)(1), (3).

32.     The term "applicable employee remuneration" excludes "any remuneration payable solely on account of the attainment of one or more performance goals, but only if—(i) the performance goals are determined by a compensation committee of the board of directors of the taxpayer which is comprised solely of 2 or more outside directors, (ii) the material terms under which the remuneration is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of such remuneration, and (iii) before any payment of such remuneration, the compensation committee referred to in clause (i) certifies that the performance goals and any other material terms were in fact satisfied."  I.R.C. § 162(m)(4)(C).  In other words, if a covered employee's compensation exceeds $1,000,000 and meets the definition of applicable employee remuneration, it is deductible in full by the corporation as an ordinary and necessary business expense.  If the compensation does not meet the definition, then it is deductible subject to a

$1,000,000 cap per covered employee.

33.     The Proxy Statement solicited stockholder approval of ADM's 2009 Incentive Compensation Plan (the "2009 ICP") at the Company's annual shareholder meeting held on November 5, 2009.  The 2009 ICP was intended to replace the Company's 2002 Incentive Compensation Plan, as amended ("2002 ICP").

34.     The Proxy Statement contained the following discussion regarding the proposal to adopt the 2009 ICP:

**Proposal No. 2 — Approval of the 2009 Incentive Compensation Plan**

**Introduction**

The company's board of directors, following approval by the Compensation and Succession Committee of the Board (the "Committee"), authorized the adoption of the Archer-Daniels-Midland Company 2009 Incentive Compensation Plan (the "2009 Plan") effective as of August 6, 2009, *subject to the approval of the 2009 Plan by the company's stockholders.* A copy of the 2009 Plan is attached as Exhibit "A" to this Proxy Statement, *and this discussion is qualified in its entirety by reference to the full text of the 2009 Plan.*

The board of directors and the Committee believe that the adoption of the 2009 Plan would be in the best interests of the company. The purpose of the 2009 Plan is to provide employees, directors and consultants with an incentive to put forth maximum efforts for the company's success and to provide a valuable means of retaining key personnel as well as attracting new management personnel when needed for future operations and growth.

Our 1999 Incentive Compensation Plan expires in October, 2009 and no further awards will be made under such plan. If the 2009 Plan is approved by the company's stockholders, no further awards will be made under the Archer-Daniels-Midland Amended and Restated 2002 Incentive Compensation Plan (the "2002 Plan"). The 2009 Plan provides that the number of shares of Common Stock of the company available for awards under the 2009 Plan will be 30,000,000 plus the number of shares that have not yet been made subject to awards under the 2002 Plan as of the effective date of the 2009 Plan. It is estimated that there will be approximately 1,347,254 shares remaining available under the 2002 Plan on the effective date of the 2009 Plan, meaning that the total number of shares available for awards under the 2009 Plan will be approximately 31,347,254. The 2009 Plan is otherwise very similar to the 2002 Plan, with the following principal changes:

- eligibility for participation has been expanded beyond employees to include non-employee directors and certain consultants and advisers to the company;

- the types of awards available for grant has been expanded to include other stock-based awards;

- minimum vesting periods have been established for awards other than options and stock appreciation rights;

- it is expressly provided that no action may be taken that would constitute a "repricing" of option or stock appreciation right awards without the consent of the company's stockholders;

- a sale of all or substantially all of the company's assets will constitute a "change of control" only when the transaction is consummated, rather than when the company's stockholders approve the transaction; and

- awards granted in substitution for outstanding awards granted by an entity prior to its acquisition by the company will not count against the maximum number of shares authorized under the 2009 Plan.

The 2009 Plan has been designed to meet the requirements of Section 162(m) of the Internal Revenue Code of 1986, as amended (the "Code"), regarding deductibility of executive compensation, discussed below. The basic features of the 2009 Plan are as follows:

**Administration**

The 2009 Plan will be administered by the Committee or a subcommittee of the Committee, which shall consist of two or more directors who are "non-employee directors" within the meaning of Rule 16b-3 under the Securities Exchange Act of 1934, "outside directors" for purposes of Section 162(m) of the Code, and "independent directors" under the rules of the New York Stock Exchange. Subject to the provisions of the 2009 Plan, the Committee will have the power to make awards under the 2009 Plan and to determine when and to

whom awards will be granted, and the form, amount, and other terms and conditions of each award. The Committee will have the authority to interpret the 2009 Plan and any award or agreement made under the 2009 Plan; to establish, amend, waive, and rescind any rules and regulations relating to the administration of the 2009 Plan; to determine the terms and provisions of any agreements entered into under the 2009 Plan; and to make all other determinations necessary or advisable for the administration of the 2009 Plan. In addition, the board of directors of the company may delegate authority to officers of the company to grant and administer option grants under the 2009 Plan to participants (other than themselves) who are not officers or directors of the company subject to the requirements of Section 16 of the Securities Exchange Act of 1934. With respect to participants outside the United States, the Committee also has the authority under the 2009 Plan to modify the terms of awards held by such participants, establish subplans for such participants, and take other actions in order to comply with the laws of other countries or the requirements of foreign securities exchanges.

**Eligibility and Number of Shares**

All non-employee directors of the company and all employees of and qualified consultants and advisers to the company and its affiliates will be eligible to receive awards under the 2009 Plan at the discretion of the Committee. The company currently has nine non-employee directors and the company and its affiliates currently have approximately 28,000 employees eligible to participate in the 2009 Plan.

The total number of shares of Common Stock of the company available for distribution under the 2009 Plan is 30,000,000 plus the number of shares remaining available for grant under the 2002 Plan on the effective date of the 2009 Plan (subject to adjustment for future stock splits, stock dividends, and similar changes in the capitalization of the company). Of this number of shares, no more than 15,000,000 may be granted in the form of awards other than options or stock appreciation rights, and no more than 30,000,000 can be subject to incentive stock options. Shares subject to 2009 Plan awards granted in substitution for outstanding awards granted by another entity prior to its acquisition by the company will not count against the maximum number of shares available for grant under the 2009 Plan. Any shares subject to an award under the 2009 Plan, or to an award under the 2002 Plan that remains outstanding on the effective date of the 2009 Plan, that is forfeited, cancelled, settled in cash or otherwise terminated will, to the extent of such forfeiture, cancellation, cash settlement or termination, again be available for award under the 2009 Plan. Shares used to satisfy the purchase price of an option or tax withholding obligations in connection with any form of award, and shares subject to a stock appreciation right that are not issued in connection with the stock settlement of the stock appreciation right will not be available for grant again under the 2009 Plan.

No participant may receive in any fiscal year of the company awards under the 2009 Plan that exceed the following limitations: no more than 2,000,000 shares subject to stock options, no more than 2,000,000 shares subject to stock appreciation rights, no more than 1,000,000 shares of restricted stock and/or restricted stock units, no more than 1,000,000 performance shares and/or performance share units, no performance units with a maximum aggregate pay-out in excess of $10,000,000, no cash-based awards with a maximum aggregate pay-out in excess of $10,000,000, and no other stock-based awards of more than 1,000,000 shares or with a maximum aggregate pay-out in excess of $10,000,000.

Awards under the 2009 Plan are to be evidenced by written or electronic agreements containing the terms and conditions of the awards. Such agreements may be amended unilaterally by the company (with the approval of the Committee) unless any such amendment would materially impair the rights of participants, in which case the consent of the participants would be required. In addition, no option or stock appreciation right award agreement may be amended to decrease the applicable option price or base price, nor may any other action be taken that would constitute a "repricing" of an option or stock appreciation right for accounting purposes, without the prior consent of the company's stockholders.

**Types of Awards**

The types of awards that may be granted under the 2009 Plan include incentive and nonqualified stock options, stock appreciation rights, restricted stock and restricted stock units, performance shares and performance share units, performance units, cash-based awards and other stock-based awards.

Subject to certain restrictions applicable to incentive stock options, awards granted under the 2009 Plan will be exercisable by the participants at such times as are determined by the Committee, but in no event may the term of an award be longer than ten years after the date of grant. In addition to the general characteristics of all of the awards described in this Proxy Statement, the basic characteristics of awards that may be granted under the 2009 Plan are as follows:

*    *    *

**Duration, Adjustments, Modifications, Terminations**

The 2009 Plan will remain in effect until all shares of Common Stock of the company subject to the 2009 Plan are distributed, or the 2009 Plan is terminated as described below.

In the event of a stock dividend, stock split, or other recapitalization that is considered an "equity restructuring" for accounting purposes, the Committee shall equitably adjust the number and type of securities available for awards or the

number and type of securities and amount of cash subject to outstanding awards, the option exercise price of outstanding options, and provisions regarding payment with respect to outstanding awards. The Committee has the discretion to make similar adjustments in connection with other changes in the company's capitalization, including due to a merger or consolidation. Adjustments in performance targets and goals applicable to outstanding awards may also be made by the Committee upon the occurrence of such events, so long as such adjustments would not cause an award intended to qualify as "performance-based compensation" for purposes of Code Section 162(m) to fail to do so.

The 2009 Plan also gives the Board the right to amend, modify, terminate or suspend the 2009 Plan, except that no amendment shall be effective without stockholder approval if such approval is required by applicable laws or regulations or the rules of the principal securities exchange on which the company's Common Stock is listed (which is currently the New York Stock Exchange). No amendment or modification of the 2009 Plan shall materially impair the rights of any participant under any award previously granted without the consent of the participant, unless the amendment or modification is made to comply with applicable law, stock exchange rules or accounting rules.

In the event of a dissolution or liquidation of the company, a sale of substantially all of the assets of the company, a merger or consolidation of the company with or into any other corporation, or a statutory share exchange involving capital stock of the company, the Committee has the discretion, but not the obligation, to replace or cancel in exchange for payment outstanding options and stock appreciation rights in accordance with the terms of the 2009 Plan. The Committee may also specify in award agreements the consequences to an award of a change of control of the company, which is generally defined in the 2009 Plan to include, in addition to the events described in the preceding sentence, the acquisition by a person or group of 30% or more of the Company's voting stock and certain changes in the composition of the company's board of directors.

**Federal Tax Considerations**

The company has been advised by its counsel that awards made under the 2009 Plan generally will result in the following tax events for United States citizens under current United States federal income tax laws.

*        *        *

*Section 162(m).* Compensation of the company's Chief Executive Officer, Chief Financial Officer and three other most highly compensated executive officers is subject to the tax deduction limits of Section 162(m) of the Code. Awards that qualify as "performance-based compensation" will be exempt from Section 162(m), thus allowing the company the full tax deduction otherwise permitted for such awards. If approved by the company's stockholders, the 2009

Plan will enable the Committee to grant awards that will be exempt from the deduction limits of Section 162(m) of the Code.

      \*             \*            \*

**New Plan Benefits**

The Committee has not yet made any determination with respect to awards that may be granted in the future pursuant to the 2009 Plan. The closing sale price of a share of Common Stock of the company on the New York Stock Exchange on September 10, 2009 was $29.01 per share.

**Voting Requirements**

The affirmative vote of the holders of a majority of the outstanding shares of Common Stock of the company present in person or by proxy and entitled to vote on this item at the meeting is required for approval of the 2009 Plan. Proxies solicited by the board of directors will be voted for approval of the 2009 Plan unless shareholders specify otherwise in their proxies. For this purpose, a stockholder voting through a Proxy who abstains with respect to approval of the 2009 Plan is considered to be present and entitled to vote on the approval of the 2009 Plan at the meeting, and is in effect a negative vote, but a stockholder (including a broker) who does not give authority to a Proxy to vote or withholds authority to vote on the approval of the 2009 Plan shall not be considered present and entitled to vote on the proposal.

**Recommendation**

**The Board recommends a vote <u>FOR</u> approval of the 2009 Incentive Compensation Plan.**

(Emphasis added).

35.     The proposed 2009 ICP was included with the Proxy Statement as Exhibit A.

Section 1.1 of the proposed 2009 ICP provided:

1.1.   <u>Establishment of the Plan.</u> Archer-Daniels-Midland Company, a Delaware corporation (hereinafter referred to as the "Company"), hereby establishes an incentive compensation plan to be known as the "Archer-Daniels-Midland Company 2009 Incentive Compensation Plan" (hereinafter referred to as the "Plan"), as set forth in this document. The Plan permits the grant of various forms of equity- and cash-based Awards. *The Plan shall become effective as of November 5, 2009 (the "Effective Date"), and shall remain in effect as provided in Section 1.3 hereof.*

14

(Emphasis added).  Nowhere in the 2009 ICP was it indicated that the effectiveness of the Plan was contingent upon shareholder approval.

36.     In contrast, section 1.1 of the 2002 ICP stated:

> 1.1.   *Establishment of the Plan*. Archer-Daniels-Midland Company, a Delaware corporation (hereinafter referred to as the "Company"), hereby establishes an incentive compensation plan to be known as the "Archer-Daniels-Midland Company 2002 Incentive Compensation Plan" (hereinafter referred to as the "Plan"), as set forth in this document. The Plan permits the grant of Nonqualified Stock Options, Incentive Stock Options, Stock Appreciation Rights, Restricted Stock, Performance Shares, Performance Units, and Cash-Based Awards. *Subject to approval by the Company's Stockholders,* the Plan shall become effective as of December 1, 2002 (the "Effective Date") and shall remain in effect as provided in Section 1.3 hereof.

(Emphasis added).   The inclusion of the "Subject to the approval by the Company's stockholders" language in the 2002 ICP demonstrates that its exclusion from the 2009 ICP was intentional.

37.     The introductory paragraph to the discussion in the Proxy Statement regarding the proposal to approve the 2009 ICP said that the effectiveness of the plan was "subject to the approval of the 2009 Plan by the company's stockholders."   However, it was noted in the same paragraph that a copy of the 2009 ICP was attached to the Proxy Statement, "and this discussion," *i.e.,* the discussion in the Proxy Statement, "is qualified in its entirety by reference to the full text of the 2009 Plan."   As stated above, the text of the 2009 ICP was silent as to shareholder approval.

38.     The conflict between the language in the Proxy Statement and the 2009 ICP was confusing and misleading to the Company's shareholders.  The Proxy Statement thus contained a materially false or misleading statement and an omission of a material fact in violation of section 14(a) of the Exchange Act and SEC Rule 14a-9.

39.     The Proxy Statement maintains that the 2009 ICP was "designed to meet the

requirements of Section 162(m)" of the I.R.C. "regarding deductibility of executive compensation." The specific language on Section 162(m) provides:

> Awards that qualify as "performance-based compensation" will be exempt from Section 162(m), thus allowing the company the full tax deduction otherwise permitted for such awards. If approved by the company's stockholders, the 2009 Plan will enable the Committee to grant awards that will be exempt from the deduction limits of Section 162(m) of the Code.

40.    I.R.C. § 162(m)(4)(C) provides that "'applicable employee remuneration' shall not include any remuneration payable solely on account of the attainment of one or more performance goals, but only if--. . . (2) the material terms under which the remuneration is to be paid, *including the performance goals,* are disclosed to the shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of any remuneration."

41.    Treas. Reg. 1.162-27(e)(4)(i) requires "material terms of the performance goal under which the compensation is to be paid [to] be disclosed to and subsequently approved by the shareholders of the publicly held corporation before the compensation is paid. . . . The material terms include . . . a description of the business criteria on which the performance goal is based . . . ."

42.    17 C.F.R. § 240-14a-101, Item 8, mandates the inclusion in Schedule 14A of the information required by 17 C.F.R. § 229.402 "if action is to be taken with regard to: . . . (b) Any bonus, profit sharing or other compensation plan . . . in which any director, nominee for election as a director, or executive officer of the registrant will participate." Such information includes, for example, "all material elements of the registrant's compensation of the named executive officers." *Id.* § 229.402(b)(1). This encompasses, among other things, "[h]ow the registrant determines the amount (and, where applicable, the formula) for each element to pay." *Id.* § 229.402(b)(1)(v). In particular, the Schedule 14A should disclose "[w]hat specific items of

16

corporate performance are taken into account in setting compensation policies and making compensation decisions." *Id.* § 229.402(b)(2)(v).

43.       Nowhere in the body of the Proxy Statement are the performance goals that covered employees must meet set forth.  Instead, they are hidden at section 11.1 of the text of the 2009 ICP, which was included as an exhibit to the Proxy Statement.  The potential performance goals are:

(a)   Earnings per share;

(b)   Net income (before or after taxes);

(c)   Return on assets, net assets, equity, investment or capital;

(d)   Cash flow, cash flow per share and cash flow return on investments, which equals net cash flows divided by owners equity;

(e)   Earnings before or after any one or more of taxes, interest, depreciation and amortization;

(f)   Gross revenues; and

(g)   Share price (including, but not limited to, growth measures and total stockholder return).

44.       Because the body of the Proxy Statement included none of the above information with respect to the 2009 ICP as required by law, it omitted numerous material facts in violation of section 14(a) of the Exchange Act and SEC Rule 14a-9.

45.       The representation in the Proxy Statement that "If approved by the company's stockholders, the 2009 Plan will enable the Committee to grant awards that will be exempt from the deduction limits of Section 162(m) of the Code" is false because the Company failed to comply with I.R.C. § 162(m)(4)(C)(2), Treas. Reg. 1.162-27(e)(4)(i), and 17 C.F.R. §§ 229.402(b) and 240-14a-101, Item 8, among other provisions.  The statement is materially false

or misleading in violation of section 14(a) of the Exchange Act and SEC Rule 14a-9.

46.     The Proxy Statement provides that

All non-employee directors of the company and all employees of and qualified
consultants and advisers to the company and its affiliates will be eligible to
receive awards under the 2009 Plan at the discretion of the Committee. The
company currently has nine non-employee directors and the company and its
affiliates currently have approximately 28,000 employees eligible to participate in
the 2009 Plan.

47.     However, the Proxy Statement is silent as to the number of "qualified consultants

and advisers" engaged by the Company who are eligible for employee incentive awards.  It also

does not state how such qualified consultants and advisers, as well as the nine non-employee

directors, would become eligible for such awards.

48.     These omissions are contrary to the requirements of Item 10(a)(1) of SEC Schedule

14A, 17 C.F.R. § 240.14a-101 ("If action is to be taken with respect to any plan pursuant to which cash

or noncash compensation may be paid or distributed, furnish the following information: . . . Describe

briefly the material features of the plan being acted upon, identify each class of persons who will be

eligible to participate therein, *indicate the approximate number of persons in each such class, and state

the basis of such participation*") (emphasis added).

49.     These are material omissions in violation of section 14(a) of the Exchange Act and

SEC Rule 14a-9.

50.     Treas. Reg. 1.162-27(e)(4)(vi) provides that:

Once the material terms of a performance goal are disclosed to and approved by
shareholders, no additional disclosure or approval is required unless the
compensation committee changes the material terms of the performance goal. If,
however, the compensation committee has authority to change the targets under a
performance goal after shareholder approval of the goal, *material terms of the
performance goal must be disclosed to and reapproved by shareholders* no later
than the first shareholder meeting that occurs in the fifth year following the year
in which shareholders previously approved the performance goal.

(Emphasis added).

51.     The 2002 ICP was approved by the Company's shareholders and became effective on December 1, 2002.  In 2004, the Compensation and Succession Committee determined to amend the 2002 ICP.  Its report in the Company's 2004 Proxy Statement filed with the SEC on September 22, 2004, stated:

> During fiscal year 2004, the Committee conducted a study of its compensation program with the assistance of an outside compensation expert. Based on that study, the Committee determined that the annual cash compensation paid to Company employees was generally competitive (as defined above), but found that long-term incentive compensation was significantly below that of the peer group companies. Based on the recommendation of the outside compensation expert retained by the Committee, the Committee adopted a new long-term incentive compensation program designed to address this deficiency and better align the interests of the officers and participating employees with the shareholders by linking awards largely to the future performance of the Company.

> Under the new program, officers and certain employees of the Company have the opportunity to receive annual incentive compensation awards in the form of stock options and restricted stock. The stock option awards will be based upon each participant reaching annual individual performance objectives as determined by the person's supervisor(s) or, in the case of the Chief Executive, by the Nominating/ Corporate Governance Committee. The restricted stock awards will be based on the Company achieving target levels of total business return, based on change in equity value calculated as a multiple of EBITDA (earnings before interest, taxes, depreciation and amortization) less debt, plus dividends, measured on a three-year rolling average. The amount of these awards will be based on a combination of the participant's position within the Company and base salary. The first awards granted under this program were made in August 2004 based on fiscal year 2004 results. The stock options were granted at the market price on the date granted, vest over five years and are exercisable over a period of ten years. The awards of restricted stock have time-based restrictions for a period of three years.

> Section 162(m) of the Internal Revenue Code generally disallows a tax deduction to public corporations for compensation paid in excess of $1,000,000 annually to each of the Company's Chief Executive and four other most highly-compensated executive officers except for qualifying "performance-based" compensation. A portion of the compensation paid to certain of the Company's executive officers will be subject to the deduction limitation. In order to retain the flexibility to compensate its executive officers in a competitive environment in accordance with the principles discussed above, the Committee believes that it would be inadvisable to adopt a strict policy of compliance with the performance-

based compensation exception to Section 162(m). The Company is submitting to shareholders elsewhere in the proxy a proposal to amend the 2002 Incentive Compensation Plan to include the performance measure used in the new long-term incentive compensation program in order to permit the restricted stock delivered under the new protocol to be fully-deductible. The Committee will continue to consider future opportunities for compliance with this exception to Section 162(m) that it feels are in the best interests of the Company and its stockholders. The Committee believes that the amount of any expected loss of a tax deduction under Section 162(m) will be insignificant to the Company's overall tax position.

52.     The 2004 Proxy Statement stated the following in the section seeking approval of

the amendments to the 2002 ICP:

**Introduction**

The Company's Board of Directors, following approval by the Compensation Committee of the Board, authorized the adoption of the Archer-Daniels-Midland Company 2002 Incentive Compensation Plan (the "Plan"), effective as of December 1, 2002, to provide employees with an incentive to put forth maximum efforts for the Company's success and to provide a valuable means of retaining key personnel as well as attracting new management personnel when needed for future operations and growth. The Company's Stockholders approved the Plan on November 7, 2002.

The Company's Board of Directors, following approval by the Compensation Committee, authorized that an amendment to the Plan (the "Amendment"), which adds an additional performance measure, be submitted to the Company's Stockholders for approval. The new performance measure relates to total business return based on change in equity value. *The Company is submitting the Amendment relating to the new performance measure to the Stockholders to permit awards based on the new performance measure to receive favorable tax treatment in accordance with Section 162(m) of the Internal Revenue Code of 1986, as amended* (the "Code"). If the Company's Stockholders fail to approve the Amendment, the Plan will remain in effect as it existed immediately prior to the proposed Amendment.

The Plan and the Amendment have been designed to meet the requirements of Section 162(m) of the Code, regarding deductibility of executive compensation, discussed below. The basic features of the Plan as proposed to be amended by the Amendment are summarized below. A copy of the Plan as proposed to be amended by the Amendment has been provided to the Securities and Exchange Commission.

*               *               *

**New Plan Benefits**

In May 2004, the Compensation Committee adopted a new long-term compensation program which is described in the "Report of the Compensation/ Succession Committee" contained in this Proxy Statement. In August 2004, the Committee made grants of stock options and restricted stock under the new program related to fiscal 2004 results in the following amounts: 474,430 options and 500,000 shares of restricted stock to G. A. Andreas; 127,665 options and 296,818 shares of restricted stock to P.B. Mulhollem; 65,228 options and 110,581 shares of restricted stock to D. J. Smith; 49,680 options and 103,657 shares of restricted stock to W. H. Camp; 55,416 options and 100,209 shares of restricted stock to J. D. Rice; 1,293,026 options and 1,776,246 shares of restricted stock to all current executive officers, as a group; and 1,763,893 options and 760,877 shares of restricted stock to all current employees who are not executive officers, as a group (includes officers who are not executive officers). No grants were made to directors of the Company.

*Approval of the Amendment by the Stockholders is required for future grants made in connection with the new long-term compensation program under this Plan to be deductible under Section 162(m) of the Code.* The performance targets for fiscal 2005 that have been established by the Compensation/ Succession Committee for the Chief Executive and four other most highly-compensated Executive Officers based upon the total business return performance measure described above are conditioned upon receiving Stockholder approval of the Amendment. The amounts of the awards for fiscal 2005 under the new long-term incentive program are not determinable at this time. The closing sale price of a share of the Common Stock of the Company on the New York Stock Exchange on September 15, 2004 was $16.43 per share.

**Recommendation**

The Board of Directors recommends a vote FOR approval of the Amendment.

(Emphasis added).

53.     The 2002 Proxy solicited shareholder votes for/against/abstain to "Adopt Amendment to Archer-Daniels-Midland Company 2002 Incentive Compensation Plan."

54.     Treas. Reg. 1.162-27(e)(4)(vi) clearly and unambiguously requires disclosure to and reapproval by the shareholders of the *materials terms* of the performance goal—not just the *amended terms*—if a compensation committee changes the material terms of the performance

goal.  Shareholder approval must occur "no later than the first shareholder meeting that occurs in the fifth year following the year in which shareholders previously approved the performance goal," which in ADM's case would have been the 2007 shareholder meeting.  *See also* Treas. Reg. 1.162-27(e)(4)(ix) *Example 4*.

55.    ADM's shareholders never reapproved the material terms of the performance goal.  Instead, they merely approved the amendments to the 2002 ICP.  Consequently, the 2002 ICP ceased being effective on December 1, 2007.

56.    "The impact of the . . . tax treatments of the particular form of compensation" should be disclosed in Schedule 14A in connection with action taken regarding "[a]ny bonus, profit sharing or other compensation plan . . . in which any director, nominee for election as a director, or executive officer of the registrant will participate." 17 C.F.R. §§ 229.402(b)(2)(xii), 240.14a-101, Item 8(b).

57.    Consequently, all representations regarding the existence and efficacy of the 2002 ICP in the Proxy Statement, as well as all comparisons between the 2002 ICP and the 2009 ICP therein, *e.g.,* "[u]nder the 2002 Incentive Compensation Plan and proposed 2009 Incentive Compensation Plan, fair market value is the closing market price on the last trading day prior to the date of grant," are materially false or misleading statements and omissions of material facts in violation of section 14(a) of the Exchange Act and SEC Rule 14a-9.

## DEMAND IS FUTILE

58.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered by the Company because of breaches of fiduciary duty by the Individual Defendants.

59.    Plaintiff will adequately and fairly represent the interests of the Company and its

shareholders in enforcing and prosecuting its rights.

60.     Plaintiff is the owner of ADM common stock and was the owner of such shares at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

61.     Plaintiff has not made a demand on the Board of Directors to bring this cause of action because such a demand would be futile.  Currently, the Company's Board consists of ten members:  Current Director Defendants Buckley, Carter, Felsinger, Haynes, Neto, Moore, O'Neill, Westbrook, and Woertz, and Current Director Dufour.  As discussed in detail below, a majority of the current directors, *i.e.,* at least five of the ten Board members at the time this complaint was filed, have specific personal conflicts of interest or have demonstrated their individual inability to act independently and impartially.

### A.      Company Officer - Current Director Defendant Woertz

62.     Current Director Defendant Woertz has been the Chairman of the Board since February 2007 and President and CEO since May 2006.  According to the Proxy Statement, Current Director Defendant Woertz received $10,890,384 in total direct compensation from ADM in fiscal year 2009.

63.     Current Director Defendant Woertz is both an officer and a director of the Company and derives substantial compensation from her position as President and CEO.  As such, she is incapable of making an independent or disinterested decision as to whether to initiate suit on behalf of the Company.

### B.      The Audit Committee - Current Director Defendants Buckley, Carter, Haynes, and O'Neill

64.     Current Director Defendants Buckley, Carter, Haynes, and O'Neill are presently and were members of the Audit Committee during the Relevant Period.  The Audit Committee "provide[s] assistance to the Board in fulfilling its oversight responsibility to the shareholders

relating to the Company's financial statements and the financial reporting process, preparation of the financial reports and other financial information provided by the Company to any governmental or regulatory body."   Moreover, it is specifically charged with "prepar[ing] the report to be included in the Company's annual proxy statement as required by" SEC rules.

65.    As discussed above, the section of the Proxy Statement concerning the 2009 ICP was not prepared in accordance with the Exchange Act and SEC rules because it contained materially false or misleading statements and statements omitting material facts in violation of section 14(a) of the Exchange Act and SEC Rule 14a-9.

66.    Said statements constituting violations of section 14(a) of the Exchange Act and SEC Rule 14a-9 were either intentional or made with reckless disregard to the truth and constitute breaches of the Individual Defendant's duties of good faith, loyalty, and disclosure such that they face a substantial likelihood of personal liability for their actions.

67.    Because they face a substantial likelihood of personal liability on their part, Current Director Defendants Buckley, Carter, Haynes, and O'Neill cannot impartially consider a demand on the Board to commence litigation against them.

68.    Current Director Defendants Buckley, Carter, Haynes, and O'Neill, along with Current Director Defendant Woertz, constitute five of the ten members of ADM's Board, a majority, and thus demand is futile.

## HARM TO THE COMPANY

69.    Because of the actions of the Individual Defendants, the 2009 ICP fails to meet the requirements of I.R.C. § 162(m).   As a result, all applicable remuneration paid to covered employees in a taxable year in excess of $1,000,000 under the 2009 ICP shall not be allowed as a deduction as an ordinary and necessary business expense pursuant to I.R.C. § 162(a)(1).   This

24

will result in millions of dollars of unnecessary expenses to the Company through the payment of additional and unnecessary taxes by the Company as well as other expenses such as professional fees to rectify the consequences of Individual Defendants' actions, expenses to re-solicit shareholder approval of an ICP, and fees and expenses in defending potential investigations and litigation.

## COUNT I

### Against The Individual Defendants for Breach
### of Their Fiduciary Duties of Good Faith and Loyalty

70.    Based upon the allegations set forth in the preceding paragraphs, the Individual Defendants intentionally or recklessly breached their fiduciary duties of loyalty to the Company and aided and abetted one another in breaching their fiduciary duties to the Company.

71.    The Individual Defendants participated in or had actual or constructive knowledge of the materially false or misleading statements and statements omitting  material facts in the Proxy Statement in violation of section 14(a) of the Exchange Act and SEC Rule 14a-9.  The Individual Defendants caused and cultivated, and failed to correct the Proxy Statement.  As alleged, the Company made numerous statements of material fact that were false and misleading when made or omitted material facts, which were known by the Individual Defendants to be false and misleading at that time or omitted material facts, or were recklessly disregarded as such by them.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

72.    The Individual Defendants abused the trust reposed in them by virtue of their positions and breached their fiduciary duty of loyalty by their actions.  As the result of their conduct, the Individual Defendants caused or allowed the Company's business to be conducted in violation of the extensive legal requirements and regulations known to them.

73.     By reason of the foregoing, the Individual Defendants have proximately caused significant injury to the Company, which has been, and will continue to be, substantially damaged as the foreseeable result of their wrongful acts and omissions.

74.     Plaintiff, on behalf of ADM, has no adequate remedy at law.

### COUNT II

### Against The Individual Defendants
### For Waste Of Corporate Assets

75.     Plaintiff repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

76.     The Individual Defendants have caused and will cause the Company to waste valuable corporate assets as described above, all of which could have been avoided had the Individual Defendants not engaged in the wrongful conduct described herein.

77.     As a result of this waste of corporate assets, the Individual Defendants are liable to the Company.

78.     Plaintiff, on behalf of ADM, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.      Declaring that the directors and officers named as Individual Defendants herein have breached their fiduciary duties as alleged herein;

B.      Enjoining the directors and officers named as Individual Defendants herein, and those under their supervision and control, from breaching their fiduciary duties by violating 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9; 17 C.F.R. § 240.14a-101; 17 C.F.R. § 229.402; 26 U.S.C. § 162(m); and 26 C.F.R. § 1.162-27;

C.      Requiring the Individual Defendants to pay to the Company the amounts by

which it has been damaged or will be damaged by reason of the conduct complained of herein;

D.      Requiring the Individual Defendants to remit to the Company all of their salaries and other compensation received for the periods when they breached their duties;

E.      Ordering that the Individual Defendants and those under their supervision and control, implement comprehensive corrective measures including a system of internal controls and procedures sufficient to prevent the repetition of the acts complained of herein which will rectify all such wrongs as have been committed and prevent their recurrence;

F.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Dated:  July 14, 2010

**RIGRODSKY & LONG, P.A.**


By: */s/ Brian D. Long*
        Seth D. Rigrodsky (#3147)
        sdr@rigrodskylong.com
        Brian D. Long (#4347)
        bdl@rigrodskylong.com
        Timothy J. MacFall
        tjm@rigrodskylong.com
        Marc Rigrodsky
        mar@rigrodskylong.com
        919 North Market Street, Suite 980
        Wilmington, DE 19801
        Tel.:  (302) 295-5310
        Fax:  (302) 654-7530

        *Attorneys for Plaintiff*

27

OF COUNSEL:

**RYAN & MANISKAS, LLP**
Katharine M. Ryan
Richard A. Maniskas
995 Old Eagle School Road, Suite 311
Wayne, PA  19087
Tel.:  (484) 588-5516
Fax:  (484) 450-2582